PENDLETON, President,
delivered the resolution of the court as follows:
The questions propounded by the district court are in the words following, to wit:
‘‘ Eirst, Are the lands within the chartered limits of this commonwealth, bound by the North Carolina line, the Tennessee, the Ohio and the Mississippi rivers, on which the defendant’s entry has been made, the same which are excepted *and reserved from the locations of treasury land warrants, and described as being the county and limits of the Cherokee Indians, by the act of assembly, entitled ‘an act for establishing a land office and ascertaining the terms and manner of granting waste and unappropriated lands?”
“Secondly, Hath the commonwealth of Virginia ever extinguished the claims of the Indian nations or tribes to the aforesaid lands; if not can the said lands be considered as waste and unappropriated, and liable to location of treasury land warrants under the aforesaid act?”
‘ ‘Thirdly, Doth not the exceptions in the said act imply and give a right of entry on any tract of land other than lands lying within the limits of the said exceptions?”
“Fourthly, Hath the act of assembly, entitled ‘an act to adjust and regulate the pay and accounts of the officers and soldiers of the Virginia line on continental establishment, and also of the officers, soldiers, sailors and marines in the service of this state, and for other purposes,’ so appro *724 priated the said lands, or subjected them to the claims of the said military as to annul and make void all entries made thereon by virtue of treasury land warrants prior to the passage of the said act?”
“Fifthly, If the legislature hath a right to appropriate lands lying within her chartered limits to h'er officers, &c. before a purchase, were not these lands liable to be entered by treasury land warrants previous to such appropriation, if excluded in the exceptions' of the act for establishing a land office, &c. ?” 1
“Sixthly, Doth not the clause in the abt of assembly, entitled, ‘an act for surveying the lands given by law to the officers and soldiers on continental and state establishments, and for other purposes,’ wherein it saves to all persons whatsoever, other than the said officers arid soldiers; all right and title to 'the said four thousand actek of land, as fully as if this act had never been made, secure to the' said George Rogers Clarke his right of entry:” arid
“Seventhly, Was*not'the saving clause, referred to in'the foregoing question, made on the' principle that if the assembly *had ' undertaken to ' determiné the right of entry they would'have exercised judicial powers, which not being authorized to do''by the constitution;• they saved to all persons whatsoever, other than the officers' and soldiers, all' -right 'and title to the said four thousand acres of land, and left the question of right - to the future decision of a court df justice?” '■
On- the consideration whereof and of the arguments of the counsel, the court' have agreed on the following answers thereto:
The first question seems to the court to be'of a mere mattér of fact, to be decided upon evidence; none of which is stated, nor hath it been supplied in the court of appeals by any law, charter Or treaty, produced or suggested, which ascertain what were “the-county and limits of the Cherokee Indians in 1779. ”' • No solution of this question can therefore be given, except that it is the opinion of this court that the party, whose interest it is to extend the exception to the land in dispute, must prove the land to be within the description of that exception.
The second question consists of two parts: So far as it relates to the'- commonwealth’s having extinguished the claims of the Indian nations or tribes to the land in dispute, it stands on the same ground as th'e former question, being a matter of fact, which this court is "furnished with no means of deciding : It is however the opinion of this court, that the fact either way is of no consequence in this dispute between citizen's claiming under the commonwealth. The old claims of the crown by the treaty of 1763, extended to, and was limited by, the river Mississippi, including the land in dispute; which gave a right'to' the crown 'against other Ru'ropean nations, and fixed the limits of titles to be' derived from that source to the citizen's'" of Virginia: The dormant title of the Indian tribes remained to be extinguished by government, either by purchase or- conquest; and when' that was done, it enured' to the benefit' of the citizen, who had previously acquired a title | from the crown, and did not authorize a new grant of the lands as waste and ^unappropriated. This being the case at the time of the revolution, when the commonwealth succeeding to the royal rights, the constitution of government in 1776 asserts the territorial claim of Virginia to extend westerly and northerly according to the charter of king James in 1609, and the treaty of peace in 1763, including the country in which the disputed lands lie. When therefore the legislature, by the act of 1779, establish a mode for granting the waste and unappropriated lands of the commonwealth, and authorize the purchase thereof by money paid into the treasury, it is the opinion of this' court,'that the lands within the country described were liable to the locations of any citizen upon treasury warrants, provided" it did not interfere with any of the exceptions or reservations mentioned in the act.
The third question appears to the court to be answered in the' solution of the second question.
Upon thé fourth'question, it is the opinion of this court that the act stated could only restrain future entries and locations to Ihe prejudice of the officers and soldiers, but coul'd nof have á retroactive operation to defeat a prior entry and 'location made according'to the existing laws at the time.
The fifth question • appears -to be fully answered upon the second question; since in the opinion of the court the Indian title did not impede- either the power of the legislature 'to grant the land to the officers and soldiers, or the location of the lands on treasury warrants, the grantee, in either case, must risque the -event of 'the Indian claim; and yield to it, if finally established, or have the benefit of- a former or future extinction thereof.
The sixth' and seventh questions appear to be connected, and are probably solved in the answer to the fourth. The saving clause, ' in the act of 1783, alluded to, is confined to the four thousand acres-to he laid off for a town; but this court is of opinion that such saving clause was wholly unnecessary,-since the legislative bounty could only act upon lands then waste and unappropriated, and not upon such as any citizen had acquired a prior right to by law.